IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

ROBERT LEWIS WILLICH  §

v.  §  CIVIL ACTION NO. 6:08cv244

SHERIFF RONNIE BROWNLOW, ET AL. §

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Robert Willich, a former inmate of the Henderson County Jail proceeding *pro se*, filed this civil action complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. §636(c). As Defendants, Willich named Sheriff Ronnie Brownlow, Tony Allison, Lt. Ward, Lt. Felts, Sgt. Harris. Cpl. Rickman, Deputy Lola Brown, and Deputy Shamon McLean.

Willich raised three issues in his lawsuit and at an evidentiary hearing. These were: (1) the jail had an inadequate law library; (2) he was denied access to newspapers during his confinement in the jail; and (3) racial discrimination in the selection of trustees. After the hearing, the Court dismissed Willich's claim concerning the adequacy of the law library and dismissed the Defendants Ward, Felts, Bowman, and McLean, and ordered the remaining Defendants to answer the other two claims.

The Defendants have answered these claims and have filed a motion for summary judgment. In this motion, the Defendants assert that Willich failed to exhaust his administrative remedies on the claims which he brings and that these claims are without merit. Specifically, the Defendants say that the policies of the Henderson County Jail provided that inmates are allowed to review newspapers and magazines brought to the jail by outside publishers in a holding cell, but cannot take these to their cells, and that the only grievance which Willich filed in the jail was a request to have

1

a hard bound book and a newspaper article given to him in his cell. The Defendants also say that Willich did not ever file a grievance asking to be allowed to order newspapers or magazines or to review published items in a holding cell. The Defendants state that inmates are only allowed newspapers and magazines in holding cells because of security concerns, noting that items can be smuggled inside of a newspaper or magazine brought to the jail by family members, and that in other jurisdictions, small "microdots" of drugs have been placed on such items prior to being brought into the jail. The Defendants also aver that newspapers or magazines can be rolled up and used as weapons and that the ink from such items has been used for tattoos.

With regard to the trusty issue, the Defendants say that Willich has been incarcerated in the Henderson County Jail on two separate occasions and has been made a trusty both times. He was removed from trusty status on each occasion for failing to follow jail rules; he was removed as a trusty on December 20, 2006, but reinstated on December 27, 2006, and was removed from trusty status on May 18, 2007, because he had a verbal altercation with a trooper when he was supposed to be washing the trooper's car. The Defendants state that Willich never filed a grievance about his trusty status or about trusty assignments in general.

In his response to the motion for summary judgment, Willich says that his grievances were not answered and "pulled out of his file." He states that the Defendants never offered to let him read the newspaper in a holding cell and scoffs at the Defendants' asserted security concerns, saying that the Defendants fail to offer any evidence of newspapers or magazines being used as a weapon or for tattoos and that the state prison apparently does not have this problem, since inmates in state prison are allowed to receive newspapers and magazines. Willich says that "inmates never use newspapers as clubs" and that any paper at all can be used to make tattoos. Although the Defendants contended that inmates had access to news on television, Willich says that this is not the same, because the local newspapers cover more local news. He states that he did file a grievance, referring to Page 69 of the records offered at the hearing.

With regard to the trusty claim, Willich says that Cpl. Rickman was the person in charge, with the responsibility of deciding who got to be a trusty. Although Rickman says in an affidavit that he went from cell to cell in deciding who got to be a trusty, Willich says that this never happened. However, Willich then says that when he was made a trusty, it was done by officers other than Rickman and that Rickman would never choose him to be a trusty.

Willich denied that he had a verbal altercation with a DPS trooper, saying that he had not seen this trooper since his trial, and that the trooper did not make a report of any such altercation to Rickman. Although he says that Lt. Felts told Officer Scott Myntti to remove Willich from trusty status, he insists that Rickman showed discrimination, saying that Myntti "is just an officer got stuck in between."

In his motion for summary judgment, Willich says first that he filed interrogatories which he has a right to have answered, but these have not been. The discovery plan in effect for this case, set out in the Court's order to answer, provides for disclosure only, and not interrogatories, requests for admission, or other such tools.

Next, Willich says that the Defendants deny his allegations in their answer, and later admit their behavior but say that their acts did not violate clearly established constitutional rights of which a reasonable person would have known. He says that this discrepancy creates issues of material fact. A review of the Defendants' pleadings fails to show any admission to the behavior alleged by Willich.

Next, Willich says that he did not get answers to the grievances which he filed. He attaches copies of the grievances which he filed. On May 26, 2007, Willich filed a grievance saying that he needed a notary and copies of his brief, because he was being denied access to court and to the law library. The response, signed by an officer named Bauman, said that a request form which be sent to Lt. Ward about law books and that copies had been made.

On December 8, 2006, Willich filed a grievance complaining that there was no law library and that he needed a copy of the rules of civil procedure concerning probate matters. The response to this grievance was "all info given."

On May 19, 2007, Willich filed a grievance complaining that he was not getting his medication. He filed another grievance about his medication on May 27, 2007. Both of these grievances received the response that the nurse would consult with the doctor about his arthritis medication, and that allergy medication was issued on June 1, 2007, the day of the response.

On November 19, 2006, Willich filed a grievance asking for legal work from the property room, and the response was that his legal work was provided to him. On July 1, 2007, Willich filed a grievance asking for four envelopes and copies of documents contained in an envelope which he had, as well as copies of cases which he set out. The response was that four envelopes and a pen were provided and that Bauman could not find the cases. Bauman also provided an address for the Mabank Independent School District that Willich wanted.

On June 7, 2007, Willich filed a grievance which he styled as a "first appeal." In this grievance, he says that he sent a request form to Lt. Ward asking for copies of religious books and a TDCJ inmate newspaper called the Echo, which he had brought with him from the prison. Willich says that the response to this grievance came from Ms. Bauman, the law librarian, which is improper because he had sent the grievance to Lt. Ward. The response was that grievance forms need not be answered by the specific officer to whom they are addressed and that religious literature had to be approved by the chaplain and meet jail policy criteria before it could be possessed in cells. The response stated that hardcover books are not allowed in cells and that newspapers and magazines are not allowed in cells, but that inmates have access to news and information by watching TV, which they may do between 7:00 am until 11:00 pm daily. This response was signed by Sgt. Shaw.

On June 27, Willich filed another grievance, complaining that the prior grievance had been sent to Chief Deputy Allison but was answered by Sgt. Shaw; he said that grievances are supposed to go "up the chain not down." He complains that the chaplain is a volunteer and so he is being

denied of religious liberty by the fact that the chaplain has to approve religious literature. The response to this grievance, from Officer Bauman, was that "Biblical law books [sic] given the inmate per Chief Allison and Lt. Ward."

Legal Standards and Analysis

General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123,

126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## Exhaustion

The primary issue in the case concerns the exhaustion of administrative remedies. The Defendants assert that Willich has failed to exhaust his administrative remedies by pursuing the grievance process at the Henderson County Jail. Willich attaches copies of the grievances which he says that he filed.

Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

6

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit. The Fifth Circuit has held that where an inmate fails to exhaust his administrative remedies, the lawsuit may be dismissed with prejudice for purposes of proceeding *in forma pauperis*. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).

None of the grievances furnished by Willich make any mention of being denied trusty status, for racial or any other reasons. The competent summary judgment evidence, including Willich's own pleadings as well as the summary judgment evidence furnished by the Defendants, thus shows that Willich did not exhaust his administrative remedies on his claim regarding racial discrimination in the selection of trustees.

The Defendants also assert that Willich did not exhaust his administrative remedies concerning his claim of being denied newspapers. The records filed by Willich show that he filed a grievance on May 26, 2007, complaining about needing a notary and copies made of his brief in his civil case. This grievance went on to complain about the denial of newspapers, saying that he has a First Amendment right to "any sort of media" and that if he wants to have a friend order the local newspaper, it is his right to do so. He also complains about being denied religious hardcover books, saying that the county sells chessboards which are harder than the covers on the books, and that being denied these books violates his right to religious freedom. For relief, Willich asks that he be given his religious books and his copy of the TDCJ prison newspaper, the Echo, and that he be provided with notary services and copies of all of the briefs in his case. The response to this grievance says "will send a request form to Lt. Ward about law books. Copies made."

On June 7, 2007, Willich filed a grievance which he entitled "First Appeal." This grievance says that a request form was sent to Lt. Ward about some "Biblical law books" and a copy of the Echo. He says that he did not receive a response from the staff member to whom he sent the request,

7

and interprets the response to the grievance as saying that he should ask Lt. Ward for the items. Willich says that not allowing him access to his religious books is "discrimination against him for being an inmate in general and discrimination against his religion," and not allowing him to have his copy of the Echo or to have the regular newspaper delivered to him is a violation of his rights under the First Amendment. For relief in the grievance, Willich asks that he be given his religious books and the Echo.

The response to this grievance says that just because a request form is addressed to a specific person does not mean that the person has to answer that request. Religious literature has to be approved by the chaplain and must meet jail criteria in order for inmates to have it in their cells. Newspapers and magazines are not allowed in cells and that inmates are allowed to watch TV so as to have access to news and information.

In their motion for summary judgment, the Defendants assert that Willich never actually tried to order an outside newspaper or magazine while in jail, and never filed a grievance asking to be allowed to do so. In addition, the Defendants say, Willich never asked to be allowed to review his copy of the Echo in a holding cell, as jail rules permitted. Instead, he simply requested that he be allowed to keep his copy of the Echo, as well as some religious books, in his cell.

The Supreme Court has stated that the purpose of the exhaustion requirement is to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006). In this case, the jail officials did not have an opportunity to address Willich's complaint that he was not allowed to subscribe to newspapers or magazines, because he did not raise any such complaint in his grievances. Furthermore, the affidavit of Joshua Rickman says that under the grievance process in the Henderson County Jail, the grievance would first go to a grievance officer, and then to a lieutenant; from there, it could be appealed to the grievance board, and finally to the Sheriff. In this case, nothing in the jail records or Willich's pleadings shows that Willich ever appealed his grievance to the Sheriff.

The Supreme Court also explained that in the context of exhaustion of administrative remedies, "proper" exhaustion is required. This is because the benefits of exhaustion could be realized only if the prison grievance system is given a fair opportunity to consider the grievance, and that the system will not have such an opportunity unless the grievant complies with the procedural rules. Woodford, 126 S.Ct. at 2388.

In this case, Willich did not properly exhaust his administrative remedies because he did not complete all steps of the process. In Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004), the Fifth Circuit specifically stated that "a prisoner must pursue a grievance through both steps [of the TDCJ grievance process] for it to be considered exhausted." Here, the jail had a three-step process, involving a grievance officer or lieutenant, a grievance board, and a final appeal to the Sheriff. Willich did not show that he completed all of this process, and so he failed to exhaust his administrative remedies on this claim as well.

Although Willich appears to argue that he was thwarted in his efforts to seek redress through the grievance procedures, saying that many of his grievances were not answered or otherwise ignored, his allegations are wholly conclusory and thus insufficient to evade the exhaustion requirement. *See* Mentecki v. Corrections Corp. of America, 234 F.3d 1269 (6th Cir., October 27, 2000) (not selected for publication in the Federal Reporter) (available on WESTLAW at 2000 WL 1648127) (inmate who "merely makes a speculative and conclusory assertion that filing a grievance would be futile has not satisfied the exhaustion requirement of Section 1997e(a)"); *accord*, Penn v. Kastner, civil action no. 5:05cv202 (E.D.Tex., April 4, 2007) (unpublished) (available on WESTLAW at 2007 WL 1051773) (inmate's conclusory assertion that "the grievance process is futile" does not set forth a valid basis upon which to excuse the exhaustion requirement).

In Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004), the Southern District of New York stated that unsupported allegations that grievances "must have been lost or misplaced" does not relieve inmate of the obligation to appeal claims to the next level once it becomes clear that a response to the initial filing was not forthcoming. *See also* Nunez v. Goord, 172 F.Supp.2d 417,

428-29 (S.D.N.Y. 2001) (inmate's unsupported claims that his grievances were lost at the grievance office or destroyed by officers failed to excuse the inmate from the exhaustion requirement); <u>Wiley v. Civigenics</u>, civil action no. 5:07cv60 (E.D.Tex., Feb. 3, 2009) (unpublished) (available on WESTLAW at 2009 WL 260948) (unsupported allegations that the defendants "repeatedly denied answers to grievances" did not excuse the exhaustion requirement).

Similarly, Willich's unsupported and conclusory assertions that the jail officials refused to answer his grievances do not suffice to excuse the exhaustion requirement. The record shows that Willich filed several grievances which received answers, but does not indicate that any of these were ever appealed to the Sheriff. He did entitle one of his grievances which discussed the newspaper issue "First Appeal," apparently indicating that he was taking the first appeal in the process, but the record is devoid of any second appeal, or an appeal to the Sheriff from the denial of the "First Appeal." As a result, Willich failed to exhaust his administrative remedies on both of the claims in his lawsuit, and so the lawsuit should be dismissed with prejudice. <u>Underwood v. Wilson</u>, 151 F.3d at 296.

## Conclusion

The Court has carefully examined the record in this cause, including the Plaintiff's pleadings, the Plaintiff's and the Defendants' motion for summary judgment, all competent summary judgment evidence submitted by the parties, and all other documents and records in the case. Upon such review, the Court has determined that there are no disputed issues of material fact concerning the exhaustion issue, and that the Defendants are entitled to judgment as a matter of law because the Plaintiff Robert Willich failed to exhaust his administrative remedies. It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 89) is hereby GRANTED and the above-styled civil action be and hereby is DISMISSED with prejudice for failure to exhaust administrative remedies, as required by 42 U.S.C. §1997e. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 19th day of January, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE